LYLE ROBARDS, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY A CORPORATION, APPELLANT.—125 S. W. (2d) 891.

Kansas City Court of Appeals. January 30, 1939.

*Charles L. Carr, E. E. Ball* and *Virgil Yates* for appellant.

*Lancie L. Watts* for respondent.

964

[redacted]

SHAIN, P.J.—This action involves a collision between a tractor and trailer, operated and owned by plaintiff, and a street car owned and operated by the defendant.

The collision occurred at the intersection of Fifteenth Street and Indiana Avenue in Kansas City, Jackson County, Missouri. Fifteenth Street runs east and west, is approximately seventy-five feet from curb to curb, and is a through street. Indiana Avenue runs north and south, is approximately thirty feet from curb to curb, and there is a stop sign situate at its intersection with Fifteenth Street. On Fifteenth Street the defendant has double cartracks which are somewhat closer to the north curb than to the south curb of Fifteenth Street.

The collision occurred at about 6:30 A. M. on a clear morning, and the streets were dry. The plaintiff's truck was traveling north on Indiana Avenue and the street car was traveling west on Fifteenth Street. At the time of the collision the truck was traveling at approximately seven miles an hour and the street car from twenty-five to thirty miles an hour.

When the collision occurred the truck, ten feet in length and the trailer twenty-two feet in length, had entirely crossed the south or eastbound car tracks and the truck had entirely crossed the north or westbound tracks, but the trailer was on the north tracks and was struck by the street car at approximately the center of the said trailer.

The plaintiff for cause of action makes allegation of corporation and business of defendant and thereafter states as follows:

"That at the time of said collision and damages plaintiff was exercising proper care and caution for his own safety, and the safety of the vehicle which he was driving."

Thereafter plaintiff pleads as follows:

"Plaintiff further states that the defendant, its agents, servants

and employees, were careless and negligent in that the defendant, its agents, servants and employees in charge and operating said street car, saw plaintiff's trailer and tractor, and the driver thereof, or by the exercise of ordinary care could have seen the same in a position of imminent peril or about to enter a position of imminent peril, in time thereafter, by the use of the conveniences at hand, to have stopped said street car, slackened its speed, or issued a warning signal and thereby could have avoided the striking of and damages to plaintiff's trailer, but this the defendant, its agents, servants and employees, negligently and carelessly failed to do; that said defendant, its agents, servants and employees, negligently and carelessly operated said street car at a high, excessive and dangerous rate of speed as it approached the place of collision, to-wit, thirty miles per hour; in that the defendant, its agents, servants and employees, negligently and carelessly failed to yield the right of way to plaintiff and his said tractor and trailer; that said defendant, its agents, servants and employees, negligently and carelessly failed to keep a vigilant watch for persons and vehicles, and particularly plaintiff's vehicle, on the thoroughfare of street ahead of said street car, or approaching the pathway of the street car so operated, when by keeping such watch, the defendant, its agents, servants and employees, could have seen plaintiff's vehicle on the street, or approaching the pathway of defendant's street car, in time for the motorman thereof, by the exercise of the highest degree of care, with the means and appliances at hand, to have stopped said street car, slackened the speed thereof, sounded a warning and thereby could have avoided striking plaintiff's vehicle, but this the said motorman negligently and carelessly failed so to do. Plaintiff further states that at said time and place the said negligent acts and omissions of defendant, its agents, servants and employees, operated severally and concurrently in causing plaintiff's vehicle to be struck and damaged, as follows, to-wit:''

Thereafter damages to the trailer are set forth.

The defendant makes general denial and further pleads contributory negligence as follows:

''That said plaintiff negligently and carelessly failed to exercise the highest degree of care in the operation of his tractor and trailer, in that he failed to drive the same in a careful and prudent manner, and negligently and carelessly failed to keep a vigilant and careful lookout for street cars and other vehicles upon Fifteenth Street when he entered same from Indiana Avenue at the time and place mentioned in his petition.

''That he was at said time and place operating his tractor and trailer at a high, excessive and negligent rate of speed under the circumstances then and there existing, and failed to observe his surroundings and the oncoming street car.

''Defendant states that plaintiff was further negligent and careless in this, to-wit:

"That at said time alleged in his petition there was in full force and effect in Kansas City, Missouri, an ordinance known as the 'Traffic Code of Kansas City, Missouri,' passed December 15th, 1930, effective January 1st, 1931, being Ordinance Number 2031 of the Council of Kansas City, Missouri."

Thereafter portions of the ordinance relied upon are set forth.

Further, defendant interposed a counterclaim which was withdrawn before case was submitted. Plaintiff makes general denial to answer and files answer to counterclaim withdrawn as aforesaid.

Trial was before a jury and resulted in a verdict for plaintiff in the sum of $467.95. Judgment was in accordance with verdict and defendant has duly appealed.

We will continue to refer to respondent as plaintiff and to appellant as defendant.

## OPINION.

At the close of plaintiff's testimony defendant prayed the court to give a peremptory instruction, in the nature of a demurrer, directing a verdict for defendant and upon refusal of the court so to do elected to stand upon its demurrer.

The refusal of the court to give the demurrer is charged and assigned as error. This requires a full review of all the evidence.

From a casual reading of the plaintiff's petition herein and a consideration of the principal instruction on behalf of plaintiff, one is at first impressed with the idea that plaintiff intended to present his case under the humanitarian rule. However, a careful reading of of both petition and instruction clearly shows that an essential element of allegation to bring the issue under the humanitarian rule is missing in both pleading and instruction.

Further, there is shown colloquy when the question of demurrer to evidence was being considered by the court wherein it stands unchallenged as record, that plaintiff "concedes that no case has been made under the humanitarian rule up to that time."

As the defendant stood upon its demurrer there could not, of course, have been made after that time a case under the humanitarian rule.

It is clearly shown by the record that both parties conceded to and adopted the theory and elected to submit the case on prime negligence. It follows that we must give our consideration as applying to a negligence case wherein contributory negligence is a proper affirmative defense.

The burden, of course, is upon the plaintiff to make his case, but it is our duty to give to the plaintiff the benefit of every reasonable inference that can be drawn from the evidence. From a study of the record we find that the most favorable evidence to the plaintiff is his own testimony.

There were but two witnesses who saw the collision called to testify. The plaintiff, as a witness in his own behalf, was corroborated in the main by the other witness who does not contradict the plaintiff in any material respect.

It is disclosed by the evidence that the plaintiff is the owner of a truck and trailer, and engaged in transporting freight between Kansas City, Missouri, and St. Louis, Missouri. It appears that plaintiff had left St. Louis about 8 P. M. on May 27, 1936, and had arrived at the intersection of Fifteenth Street and Indiana Avenue at 6:30 A. M., May 28; the distance traveled being 260 miles. Plaintiff was accompanied on the way by two other freight trucks, and arrived at the intersection ahead of the two other trucks. Plaintiff had stopped for a rest a few times in making the trip. Plaintiff's trailer was loaded with 1800 pounds of freight; total weight of trailer and truck being 3100 pounds.

As relating to the approach and movements at the scene of collision, the following questions and answers are shown in the record of plaintiff's testimony.

"Q. What did you do when you reached Fifteenth Street? A. I stopped.

"Q. And when you stopped what did you do? A. I looked both ways for traffic.

"Q. You looked to your left, did you? A. Yes, sir.

"Q. That was to the west? A. Yes, sir.

"Q. Did you observe any street cars or automobiles approaching within a block of Fifteenth Street and Indiana Avenue at that time? A. No. I did not.

"Q. Did you look to your right? A. Yes, sir.

"Q. That is to the east? A. Yes, sir.

"Q. Tell the jury whether or not you observed any automobiles approaching from the east coming towards Indiana Avenue at that moment within a block or two blocks of that intersection? A. I didn't recollect seeing any automobiles at all to the right.

"Q. Tell the jury what you did see and where you saw it. A. I seen a street car. I judge it was about a block away.

"Q. That first block is where? I mean what is the name of the street? A. I believe it is Bales.

"Q. And how far east of Indiana Avenue is Bales? A. I judge it is a block away.

"Q. I mean how many feet away? A. There is usually 300 feet in a block.

"Q. Tell the jury at what speed the street car was moving when you observed it a block to your right. A. I judge it was running the normal rate of speed."

As to where plaintiff stopped before entering Fifteenth Street, he testifies as follows:

"Q. Where were you sitting with reference to the property line of Fifteenth Street projected across Indiana Avenue? A. Somewhat right at the property line."

As to what plaintiff observed and did in proceeding from the intersection is as follows:

"Q. When you observed this street car a block away in the position you have described what did you do? A. I started on across Fifteenth Street towards Twelfth Street.

"Q. In what gear did you start? A. I started in first gear.

"Q. And then what did you do? A. I drove out in the street and shifted to second gear.

"Q. Please talk a little bit louder so that the court can hear what you are saying? A. Yes, sir.

"Q. After you had shifted into second gear, tell the jury at what speed your trailer outfit was moving along? A. After I had shifted into second gear?

"Q. Yes, sir? A. After I got up into second gear I probably was running five or seven miles an hour.

"Q. Tell the jury upon what part of Indiana Avenue did you proceed across this intersection? A. I didn't get that question.

"Q. Upon what part of Indiana Avenue, that is, on the east side or on the west side, did you proceed across Fifteenth Street? A. The east side of Indiana.

"Q. That would be which hand side? A. The right-hand.

"Q. And it was your plan to go where in order to get to Fifth and Oak? A. I was going to Twelfth Street and on up to Indiana to Twelfth and from Twelfth Street to Prospect and Prospect to Independence Avenue; Independence Avenue to Oak and Oak to Missouri and Oak.

"Q. Did you look to see where the street car was again after you left the south curbing? A. Yes, sir.

"Q. Tell the jury where you were when you looked again for the street car? A. I was practically up to the south street car tracks and I judge the street car was about a half block away.

"Q. Tell the jury at what speed the street car was traveling at that moment? A. I didn't see the street car had slackened up a bit.

"Q. Then what did you do? A. I proceeded on across the street.

"Q. First tell the jury how far away in feet it was that you observed this street car at this last mentioned point? A. About 150 feet.

"Q. And you were then about to enter upon the south tracks? A. Yes, sir.

"Q. Then what did you do? A. I proceeded on across the street.

"Q. And what happened? A. I got almost up to Indiana, leaving Fifteenth into Indiana, and the street car hit me."

As to conversation with the motorman at the scene, the testimony of plaintiff appears as follows:

"Q. (Mr. Watts) You may say what you said to the operator and what he said back to you. A. I walked up to the operator and asked him if he had any brakes on that street car and he said yes. I asked him why he didn't use them and he said, 'I didn't know you was coming across the street.'"

The plaintiff further testifies as follows:

"Q. About where was the street car with reference to the east line of Indiana Avenue as you started to move across Indiana Avenue? A. I would judge about 250 feet.

"Q. From the time that you observed that street car 250 feet away until the moment of the collision, tell the jury whether or not the street car motorman sounded any gong or any warning whatsoever—A. (Interrupting) He did not.

"Q. (Continuing)—of his intention to continue across that intersection? A. He did not."

As to the question of warning by the motorman on the street car, the plaintiff testifies as follows:

"Q. You didn't need any warning from the gong, did you? A. For what?

"Q. You saw the car coming. You didn't need to have the gong sounded as far as you were concerned to let you know the street car was coming on, did you? A. No, sir."

The plaintiff's testimony and the evidence is all to the effect that the street car, at a distance of 300 feet from the intersection, was running at a speed of twenty-five to thirty miles an hour, and that there were no brakes applied, nor any slackening of speed up to the time of the impact.

Mr. William Burt, driver of the truck immediately behind plaintiff, was called as a witness for plaintiff. Mr. Burt testified that he was some ten or twelve feet behind plaintiff's trailer when they stopped at the intersection. Mr. Burt corroborates plaintiff's testimony as to the speed of the street car being from twenty-five to thirty miles an hour. Mr. Burt further corroborates plaintiff as to his speed approaching the place of collision.

Mr. Burt's observation of the events was from his position in his truck as it was standing at the stop sign at the intersection, and he testified as to his observation as follows:

"Q. Did you have occasion to sit there and watch that street car as it approached the intersection? A. Yes, sir.

"Q. Did you see the motorman inside that street car? A. Not right at that time I didn't.

"Q. Well, when did you see him? A. Well, I glanced back when I first saw the street car about eighty or ninety feet away, I glanced back at the intersection to see if the intersection was going to be clear and I would have time enough to get on across and saw where Robard's outfit was, and I looked back at the street car and that is when I first observed the motorman.

"Q. Then did you observe the motorman inside the street car? A. Yes, sir.

"Q. Tell the jury where he was looking when you looked back the second time at him? A. He appeared to me like he was looking down at his controls.

"Q. Then tell the jury what happened? A. About that time, about the time I looked around it appeared like he raised his head up from looking down at his controls and saw the trailer was in front of him and he turned around and took about three running steps back in the car.

"Q. Tell the jury how far the front end of that street car was from the trailer when he let loose of the controls and started running? A. Well, from thirty to forty feet away.

"Q. And to what part of the street car did he arrive or at what part of the street car did he arrive with reference to the center of the street car at the moment of the crash? A. Well, it was about three steps back, as far as I could see.

"Q. Did you see the actual collision? A. Yes, sir.

"Q. What part of the street car came into what part of the trailer? A. You mean what part of the street car?

• "Q. Yes. A. Well, the front end of the street car crashed into the trailer head-on.

"Q. What part of the trailer did it crash into? A. Well, just about the center of the trailer."

The plaintiff testified that at the time he started into the intersection, after having stopped, he was four or five feet south of the curb line of Fifteenth Street.

On cross-examination of plaintiff the following questions and answers appear:

"Q. And how far did you have to travel from the time you started up until you reached the south rail of the westbound car track? A. How many feet I had traveled?

"Q. Yes. A. The south rail of the east-bound car track?

"Q. To reach the south rail of the west-bound car track? A. I judge about thirty-eight or thirty-nine feet.

"Q. Thirty-eight or thirty-nine feet. You first saw the street car 300 feet away and from then on you watched the street car and you came on across? A. I watched both ways and started ahead.

"Q. But you were conscious of the approach of the street car at no change of speed at all times, weren't you? A. Yes, sir."

The plaintiff testified that after starting into the intersection that he had, by shifting gears, increased his speed from four to five to six and up to seven miles an hour when he reached the south street car track. On cross-examination he testified that he could stop his truck in five or six feet when going five miles an hour, and in about seven feet going seven miles an hour. The witness was confronted.

with his deposition wherein he admitted he had testified that going at seven miles an hour he could stop in two feet. The witness explained that he had never had occasion to make investigation as to his ability to stop prior to time he had given his deposition and that he had since taken occasion to investigate and had found that he was mistaken in his former testimony.

As countering the claim of defendant that demurrer should have been given, plaintiff strongly urges that his evidence does not show he was guilty of contributory negligence as a matter of law.

Before giving consideration to the question of contributory negligence, we revert to what we have expressed above: The plaintiff has the burden of making his case.

The physical facts are undisputed to the effect that the plaintiff from the position where he was stopped, some four or five feet from the south curb line of Fifteenth Street, saw the street car approaching the intersection at from twenty-five to thirty miles an hour, 300 feet away. The witness testified that the distance to the south rail of the south car track was thirty-eight or thirty-nine feet and that while the street car was coming at unchanged speed he proceeded, by increasing speed to seven miles an hour, up to the south rail of the south car track. The distance traveled to clear the trailer is not given in so many words. However, the plaintiff testifies and estimates that the front of his truck was within ten feet of the north curb of Fifteenth Street when the impact at the center of his trailer occurred. From a calculation of the evidence most favorable to plaintiff, the plaintiff, to have cleared his trailer, would have had to travel at least eighty-two feet from where he started.

Where there are undisputed physical facts in evidence the oral evidence must be given consideration with same to the end of determining the value of the oral evidence in establishing as to asserted fact and also in considering the conduct of plaintiff and defendant.

The plaintiff in his principal instruction in this case bases his claim on a speed of thirty miles an hour for the street car. Accepting the plaintiff's asserted speed as true, the street car was going at a uniform speed of forty-four feet per second and, from where first observed, arrived at the place of impact in less than seven seconds from the time when plaintiff started his truck to go across Fifteenth Street.

The plaintiff traveling at highest rate, seven miles an hour, moved forward ten and one-fourth feet per second and to have cleared the north track would require eight seconds. Thus is shown the hazard presented to a plaintiff who, as his testimony clearly shows, was closely observant of the situation.

The motorman in control of defendant's street car, and for whose conduct defendant is responsible, was obligated to use ordinary care.

The evidence is clear to the effect that the motorman was not exercising the degree of care required of one in his position. In other words, he was very negligent in light of the situation as judged by the oral testimony and the undisputed physical facts.

The plaintiff under the law is held to a higher degree of care than is the defendant. The question as to whether or not the plaintiff is shown by the evidence to have been guilty of contributory negligence as a matter of law must be determined.

Plaintiff's own evidence is clear to the effect that prior to entering the intersection and prior to starting from the stop sign he had every opportunity of observing and did observe the situation with knowledge of the high rate of speed of the street car, and he had every reason to believe when he started up that he was about to enter a zone of danger. The plaintiff had opportunity to observe, and did observe, after he started and during his whole progress when he increased his speed from five, six and seven miles an hour. The situation was well known to the plaintiff. He saw and knew that the street car, proceeding in a through street, was coming with no diminished speed. According to his testimony there was no time in his progress that he could not stop his truck within seven feet and yet he attempted to cross the north track with a truck and trailer, totaling thirty-two feet in length, ahead of the oncoming street car that showed no slackening of speed, and plaintiff made no attempt to stop.

The speed of the street car from a fair compilation from the evidence was at least four times as great as the average speed of plaintiff in approaching the point of collision. The plaintiff when he started across the street was thirty-nine feet from the south rail of the south street car track, and from said track the plaintiff, to have cleared the north track, had to travel the length of his truck and trailer (thirty-two feet) and the distance across the south track and across the space between the tracks, or a distance of at least eighty feet, or more than one-fourth of the distance the street car must travel. The court in commenting on a somewhat similar situation in its opinion in Roenfeldt v. St. L. & Sub. Ry., 180 Mo. l. c. 567, said:

"The evidence was the horses were going three miles an hour and the car between nine and ten. Thus while the car was going three times as fast as the horses it had more than three times the distance to travel. The plaintiff seeing the car and the speed with which it was coming judged for himself that he could clear the track before the car reached him. If that was a reasonable judgment for the plaintiff how can he condemn the motorman if he, viewing the same situation, should reach the same conclusion?"

The stop sign at the intersection was a signal of danger; the street car coming with undiminished speed of from twenty-five to thirty

miles an hour was a signal of danger; the double tracks for east and westbound cars were a signal of danger. Plaintiff's own evidence is clearly to the effect that he knew and observed the conditions which clearly presented a hazard. It is obvious that the plaintiff, with means at hand to act, opportunity to act and acknowledge of the situation, flirted with danger.

We conclude that the evidence clearly shows that the plaintiff was guilty of contributory negligence as a matter of law. [Laun v. St. Louis & S. F. Ry. Co., 216 Mo. 563, 116 S. W. 553; Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014.]

The defendant urges other error, but in view of our conclusion above, we refrain from comment as to same.

Judgment reversed and remanded. All concur.